IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MICHAEL MANCE (# 48173)                                              PLAINTIFF

v.                                                          No. 4:06CV189-M-A

CHRISTOPHER EPPS, ET AL.                                            DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Michael Mance, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. For the reasons set forth below, the instant case shall be dismissed with prejudice for failure to state a claim upon which relief could be granted.

**Factual Allegations**

The plaintiff alleges that upon his move from the Issaquena County Correctional Facility to the Mississippi State Penitentiary on June 16, 2005, he was escorted to the property room for an inspection of his property transported from Issaquena County. Unit 29 property officer Sonja Stanciel ("Stanciel") inventoried the plaintiff's property and determined that twenty of the items were not permitted under the rules of the Mississippi State Penitentiary and Unit 29. The plaintiff stated that he wished for the items to be mailed to his home. Stanciel completed a non-allowable item receipt for the items and informed the plaintiff that he had fourteen days in which to mail the items home and that failure to do so would lead to the destruction of the items. In addition, Stanciel placed all of the non-allowable items in a box and affixed the address of the plaintiff's mother on the box. The plaintiff then needed only to know how much postage was

required for mailing and to deliver that postage to Stanciel. He asked various prison employees for assistance in determining the weight of the box and postage for it, but he did not receive any assistance with that matter. After approximately a week, the plaintiff asked Lt. Danny Harris ("Harris") for assistance with getting his property mailed home. Harris then escorted the plaintiff to the property warehouse, where the plaintiff removed some items he no longer wished to send home – leaving four items to send home: a pair of blue New Balance tennis shoes, a pair of black military boots, a Walkman Radio and headphone, and a black leather belt. Stanciel agreed to a fourteen-day extension of the deadline to send these four items home – a deadline set to expire on July 7, 2005. Over the next twelve days, the plaintiff asked Harris about the postage for his non-allowable items, and each time, Harris said he was too busy to check on it. Finally, Harris spoke with the plaintiff and asked him what he wanted to do with the property. The plaintiff said he wished to have the items weighed, to determine the postage, and to send them home. Lt. Harris told the plaintiff that he did not have enough money in his account to cover the postage.

      On the day the plaintiff's items were to be destroyed, the plaintiff asked to speak with Captain Bailey ("Bailey"). The plaintiff relayed the story of his difficulties and showed him the non-allowable property sheet. The plaintiff also showed Bailey a purchase sheet from the commissary, which showed that the plaintiff had sufficient funds for the postage. Bailey then called Stanciel and told her to send the plaintiff's items home. Stanciel must have mentioned that according to her computer, the plaintiff lacked sufficient funds because Bailey replied, "I'm looking at Mance's receipt; send the man's property home." Stanciel did not, however, carry out the order.

On July 14, 2005, Harris informed the plaintiff that he needed nineteen stamps to cover postage. The plaintiff replied that he could buy them, and he placed an order for the stamps from the commissary. Unfortunately, the plaintiff's canteen order got smeared and could not be processed that day, and despite the assurances of Harris to the contrary, the plaintiff's items were destroyed on July 20, 2005, before the plaintiff could process his commissary order a second time.

## Negligent Deprivation of Property

The plaintiff asserts a claim of negligence against the defendants in this case; he claims that the defendants destroyed his property when they should have mailed it to his home. The plaintiff's allegations are a classic example of the right hand not knowing what the left is doing. The various officials handling this matter failed to communicate with each other – and through lack of due care – caused the plaintiff's loss in this case. Harris did not follow up on the plaintiff's inquiries until pushed either by his superiors or the plaintiff's deadline. Stanciel did not send the plaintiff's belongings home when ordered because the belongings required postage, and her computer showed that the plaintiff did not have sufficient funds to pay the postage. When the plaintiff did attempt to order postage (after someone finally let him know the proper amount), his commissary order was mishandled and smudged, rendering the number of stamps requested illegible. Harris told the plaintiff that his property would not be destroyed before the plaintiff could order postage. Harris was wrong, and the plaintiff's property has been destroyed.

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). The Court in *Daniels* discussed the historical reason behind the

Due Process Clause of the Fourteenth Amendment, its prohibition against *deliberate* decisions of government officials to deprive a person of life, liberty or property. *Daniels* at 331-32. "This history reflects the traditional and common-sense notion that the Due Process Clause, like its forbear in the Magna Carta, was 'intended to secure the individual from the arbitrary exercise of the powers of government.'"[1] The Court reasoned

> We think that the actions of prison custodians in leaving a pillow on the stairs, or mislaying an inmate's property, are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process law.
>
> . . .
>
> Where a government official's act causing injury to life, liberty, or property is merely negligent, no procedure or compensation is *constitutionally* required.

*Id.* (internal citations omitted) (emphasis added). The plaintiff's claim, read in a light most favorable to the plaintiff, sounds wholly in negligence. Thus, under the reasoning of *Daniels* and *Davidson, supra,* all of the plaintiff's claims should be dismissed with prejudice. Though the law dictates dismissal, other considerations merit further discussion of the facts in issue.

## Nickels and Dimes

The allegations raised in the complaint and documentary evidence establish a failure to extend basic civil courtesies and respect to members of the incarcerated population at the Mississippi State Penitentiary. The staff ignored opportunities to extend common kindness in

---

[1] *Id.*, citing *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct. 111, 116, 28 L.Ed. 232 (1884) (quoting *Bank of Columbia v. Okely*, 4 Wheat. (17 U.S.) 235, 244, 4 L.Ed. 559 (1819)) (internal citations omitted). See also *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government . . . .")

following up on the plaintiff's repeated requests for assistance in getting his items mailed home. He needed only two things: (1) for someone to tell him the amount of postage necessary to send his property home, and (2) for someone to deliver that postage to him so he could forward it to the property room. Sonja Stanciel failed to follow Captain Bailey's order to send the plaintiff's property home, perhaps because she was waiting on postage. Staff at the canteen failed to check with the plaintiff to see how many stamps he needed when the number of stamps listed on his request form got smudged. There were other failures, as well. The system in place at the Mississippi State Penitentiary for the handling inmates' property needs improvement. The plaintiff and his fellow inmates have scarcely any possessions, making the few items they do own precious to them. To those of us in the free world, the loss of a pair of tennis shoes, a pair of boots, a Walkman radio, and a belt might cause only brief frustration – mere nickels and dimes. For an inmate, however, the loss stings. As Robert Johnson said, "if you cry 'bout a nickel, you die 'bout a dime."[2] Failure to extend common courtesy and respect, to those incarcerated, in small matters often leads to frustration and irritation. These irritations may later explode into greater problems – even violence. Such inconsiderate behavior by those in authority certainly contributes to a waste of resources, judicial and otherwise, in dealing with matters such as these presently before the court. The penitentiary staff looking after the sometimes juvenile needs of their wards cannot be proud of themselves in this case. Certainly Mr. Mance is entitled to an apology from the poor stewards of his effects. Sadly, that is all he shall be able to recover in this case. The court is sympathetic to the plaintiff's frustrations in these regards. However, under prevailing law, these allegations do not give rise to an actionable cause. As such, this case shall

---

[2] "Last Fair Deal Gone Down" by Robert Johnson.

be dismissed for failure to state a claim upon which relief could be granted.  A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 9th day of February, 2007.


         /s/ Michael P. Mills
        **UNITED STATES DISTRICT JUDGE**